RAFAEL S. BAQUERO GUIDINZA, recurrente, *v.* EL REGISTRADOR DE SAN JUAN, SECCIÓN PRIMERA, recurrido.

No. 675.—*Sometido:* Marzo 9, 1927. *Resuelto:* Abril 22, 1927.

1. SERVIDUMBRES—CREACIÓN, EXISTENCIA Y TERMINACIÓN—PERSONAS QUE PUEDEN CREARLAS—DUEÑOS DE UNA PROPIEDAD—SERVIDUMBRE SOBRE FINCA A FAVOR DE OTRAS, DEL MISMO DUEÑO, SEGREGADAS DE AQUÉLLA.—El dueño de una propiedad puede segregar e hipotecar dos predios y constituir una servidumbre sobre el resto de la propiedad a favor de las fincas así segregadas e hipotecadas sin que ello viole los artículos 536 y 553, inciso 1, del Código Civil.

2. SERVIDUMBRES—CREACIÓN, EXISTENCIA Y TERMINACIÓN—EN GENERAL.—La cláusula tendente aquí a crear una servidumbre, en cuanto revela tal intención de crearla, *se resolvió:* que si bien podría equivaler a un signo aparente, no

podía limitarse en sus efectos legales el *status* de un signo aparente anterior al traspaso de cualquiera de los predios sirviente o dominante por haberse determinado la naturaleza y alcance de la carga que por ella se intentaba crear y haberle puesto su modificación o extinción fuera del poder o control del dueño.

NOTA de *A. Malaret,* R. (San Juan), denegando inscripción de una servidumbre. *Revocada.*

*F. Soto Gras,* abogado del recurrente; el registrador compareció por escrito.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

El dueño de una propiedad suburbana, con el fin de obtener un préstamo, segregó e hipotecó dos parcelas o predios en la misma escritura, en consideración al contrato y como parte y condición del mismo, constituyó "a perpetuidad" una servidumbre predial "positiva y discontinua" sobre el resto de dicha propiedad a favor de las fincas hipotecadas.

Después de la constitución formal de la servidumbre en cuestión, la escritura dispone lo siguiente:

"Dicha servidumbre consistirá en una calle para el libre uso y disfrute en la entrada y salida de los predios dominantes y que ocupará toda la extensión del predio sirviente, comenzando en su colindancia este y terminando en su conlindancia oeste.

"Los dueños del predio sirviente aquí otorgantes convienen y se obligan a levantar o remover en su oportunidad la parte de edificación que ocupa parte del predio sirviente, de modo que en ningún momento ni por ninguna razón dicha edificación constituya un obstáculo o impedimento al libre uso o disfrute de la servidumbre o calle convenida.

"A los efectos de su inscripción en el Registro de la Propiedad las partes valoran esta servidumbre en cien dólares."

El registrador de la propiedad se negó a practicar operación alguna en cuanto a la servidumbre, fundándose en que la misma no podía ser constituída por el deudor hipotecario como dueño de ambas fincas. En apoyo de esta calificación, el registrador ahora alega que de acuerdo con los términos expresos del artículo 536 del Código Civil "la ser-

vidumbre se ha de constituir sobre un inmueble en beneficio de otro perteneciente a distinto dueño''; que si se ofreciera alguna duda a este respecto la misma quedaría aclarada por el artículo 553 del mismo código que dispone:

"Las servidumbres se extinguen: 1. Por reunirse en una misma persona la propiedad del predio dominante y la del sirviente'';

que al hacer referencia la Ley a los dueños de ambos predios, sólo se contrae al dueño del dominio, con exclusión de cualquier otro interés o derecho en la propiedad; que en el presente caso lo más que puede admitirse es que de acuerdo con las disposiciones del artículo 548 existe entre las parcelas segregadas y el resto de la propiedad en cuestión ''un signo aparente de servidumbre'' que puede dar lugar en su oportunidad a una servidumbre si uno de los predios fuese enajenado, pero sin que tenga efecto obligatorio anticipadamente, por la razón de que dicho artículo hace depender la conversión del ''signo'' en servidumbre, en ausencia de oposición por parte de cualquiera de los dueños al tiempo del traspaso; que la servidumbre es un contrato, según se infiere del artículo 553, el cual dispone que se extinguirá por la redención convenida entre el dueño del predio dominante y del sirviente, y siendo un contrato bilateral no es posible hablar de acuerdo alguno, tratándose de un solo dueño; que en el presente caso, siendo el gravamen voluntario, necesita constitución y aceptación; que el acreedor hipotecario cuyo contrato constituye la consideración de la supuesta servidumbre ''no es una base cierta'' en la situación, pues dicho acreedor no puede reputarse como dueño del alegado predio dominante que ni siquiera posee; que sólo tiene un derecho futuro a que esa finca sea enajenada para hacer efectivo su gravamen, y que el dominio puede llegar a ser de él o de otro, o también puede cancelarse la hipoteca sin necesidad de efectuar la enajenación, con lo cual no quedaría cumplido el requisito que exige la ley para constituirse la servidumbre;

que en este último caso, asumiendo la existencia de la servidumbre, no habría entonces base para darla por extinguida, porque no consta de una manera terminante que la servidumbre se extinga con el crédito hipotecario, no estando entonces comprendida dentro de las disposiciones del artículo 553, supra; y que no estando claramente definidas y determinadas la creación y extensión de la servidumbre, el asiento referente a la misma sería nulo por falta de certeza respecto al carácter y a la extensión del derecho, tal como lo exige el inciso 2 del artículo 9, y por virtud de la disposición expresa contenida en el artículo 30.

[1] El artículo 536 no dice que el predio dominante deba pertenecer a otro dueño al tiempo de crearse la servidumbre. La reunión a que hace referencia el artículo 553 es una reunión absoluta, sin restricción, e incondicional. El dueño del predio sirviente no tendría derecho a la cancelación de un asiento demostrativo de la existencia de una servidumbre, a menos que hubiere disposición o convenio a tal respecto, inmediatamente de haberse adquirido el predio dominante por escritura de compra venta que contenga una cláusula referente al retracto, cuando el vendedor reembolse el precio más los intereses correspondientes,—o al hacerse tal adquisición sujeta a una hipoteca independientemente de los derechos del acreedor hipotecario y de los compradores en perspectiva en una venta en pública subasta para ejecutar la hipoteca. La ley en cuanto a la extinción por reunión, así como a la cuestión referente a la diversidad de dueños que ya hemos mencionado, prevé el dominio completo y absoluto. En uno u otro caso, ese derecho puede existir en estado incipiente hasta que ocurra algún acontecimiento futuro, aunque el privilegio de usar o ejercer el mismo puede ser diferido y hacerse depender de la ocurrencia de tal acontecimiento. Desde luego que hay ciertas distinciones, pero éstas surgen de la diferencia inherente entre la naturaleza

del asiento original y la de la cancelación de una inscripción, y nada tiene que ver con la naturaleza del dominio.

[2] El contrato que ahora tenemos bajo nuestra consideración es algo más que un mero equivalente del signo aparente a que se refiere el artículo 548 del Código Civil. El signo aparente no se convierte en una servidumbre, como alega el registrador, al enajenarse cualquiera de los predios mencionados en el artículo 548. La servidumbre preexistente, latente y potencial establecida por el dueño de ambos predios al ser traspasado cualquiera de ellos, continúa existiendo activa y pasivamente, "a no ser que, al tiempo de separarse la propiedad de las dos fincas, se exprese lo contrario en el título de enajenación de cualquiera de ellas, o se haga desaparecer aquel signo antes del otorgamiento de la escritura." La quasi-servidumbre envuelta en tal traspaso surge de un convenio implícito fundado en la existencia del signo aparente como prueba de tal convenio, y por consiguiente, de una forma de título. El documento que tenemos a la vista, en cuanto revela la intención de parte de los deudores hipotecarios de crear una servidumbre, puede equivaler a un signo aparente, pero no puede limitarse en sus efectos legales al *status* de un signo aparente anterior al traspaso de cualquiera de los predios de referencia. Hasta el momento de dicho traspaso, el signo aparente está sujeto al control absoluto del dueño de ambas fincas y puede ser removido o destruído a voluntad de éste. La escritura otorgada por los deudores hipotecarios en el presente caso por causa buena y de valor, fijó y determinó definitivamente la naturaleza y alcance de la carga que se intentaba crear y puso su modificación o extinción fuera del poder o *control* de dichos deudores hipotecarios. El acreedor que se deshizo de su dinero en consideración del aumento en valor de la propiedad hipotecada para garantizar el préstamo con motivo de la servidumbre de paso convenida como parte del contrato, obtuvo un derecho adquirido como comprador

en perspectiva, y a beneficio de todos los futuros comprado-
res de la finca hipotecada, en caso de que la misma se ven-
diera en pública subasta para satisfacer el crédito. La cláu-
sula tendente a constituir una servidumbre era tan obliga-
toria para los deudores hipotecarios desde el momento de
firmarse la escritura, como la obligación de pagar la deuda
a su vencimiento. Cuando se otorgó la escritura conte-
niendo dicha cláusula se constituyó la servidumbre en cues-
tión como una carga existente sobre el predio sirviente y
como un derecho existente a favor del predio dominante,
que redundaba en beneficio de todos los dueños posteriores
del mismo, aunque tales dueños posteriores no pudieran go-
zar del privilegio de ejercer ese derecho. antes de adquirir
el dominio absoluto del predio dominante, y aunque tal de-
recho nunca pudiera convertirse en su goce y ejercicio abso-
luto.

Para los fines de esta opinión, puede admitirse que al
cancelarse la hipoteca la cláusula que creó la servidumbre
práctica y sustancialmente equivaldría a un signo aparente
o que la situación resultante sería análoga a un signo apa-
rente antes de enajenarse una de las propiedades por el
dueño de ambas, o después de la adquisición de cualquiera
de ellas por el dueño de la otra. De todos modos, la can-
celación en el registro de un asiento de la existencia de una
servidumbre junto con la cancelación de la hipoteca, si se
hace a petición del deudor hipotecario y el dueño de ambas
fincas, no podría perjudicar a nadie, y no vemos razón al-
guna por la cual no deba cancelarse el asiento en tales cir-
cunstancias a petición de la parte directamente interesada
o permitirse que permanezca el asiento en el registro a op-
ción de tal parte a beneficio de futuros dueños del predio
dominante, en caso de un traspaso posterior del dominio.
Pero la resolución de esta cuestión no está necesariamente
envuelta en el presente caso, y por consiguiente, la dejare-
mos para el futuro.

Galindo y Escosura discuten una situación algo similar en el tomo 1 de su *Legislación Hipotecaria,* página 423, de donde copiamos lo siguiente:

''Para imponer servidumbres sobre un fundo indiviso se necesita el consentimiento de todos los copropietarios; si bien la concesión hecha por alguno o algunos queda en suspenso hasta que todos la otorguen, y obliga a aquél o a aquéllos y a sus sucesores a no impedir el ejercicio del derecho concedido. (Art. 597.) En su virtud, si los que hubieren hecho la concesión adquiriesen todo el predio, y su adquisición constare en el Registro, bastaría aquel título para inscribir la servidumbre.

''¿Y sería inscribible aquella concesión, aun antes de que el concedente adquiera toda la finca?

''Si se atiende a que hay ya una verdadera limitación del dominio, parece que debe inscribirse con sujeción a lo que previene el art. 1º del Regl.; pero si se tiene en cuenta que la persona a cuyo favor se constituye no adquiere un derecho perfecto, digámoslo así, puesto que queda en suspenso, parece que no debe inscribirse.

''Nuestra opinión es favorable a la inscripción, porque si bien es cierto que el ejercicio del derecho queda en suspenso, al fin y al cabo es un derecho, y derecho real, puesto que según dicho art. 597, obliga a los sucesores del concedente, aunque lo sean a título particular; y si no se inscribe, no puede perjudicar a tercero, y sería ineficaz esa prescripción del Código. Todo puede conciliarse, cuidando de que en el asiento se exprese que queda en suspenso la constitución de la servidumbre hasta que consientan en ella todos los partícipes.''

*Debe revocarse la nota recurrida.*